Filed 7/21/26  Marriage of McGuire CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of MELANI McGUIRE and ROBERT McGUIRE. | |
| MELANI McGUIRE, Appellant, v. ROBERT McGUIRE, Respondent. | F090217 (Super. Ct. No. 18CEFL04067) **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Glenda Allen-Hill, Judge.

H. Ty Kharazi for Appellant.

No appearance for Respondent.

-ooOoo-

Robert McGuire and Melani McGuire (now Melani Scribner) were married for approximately 20 years.  Their divorce was finalized in 2022.  On February 18, 2025, Robert filed a petition for a domestic violence restraining order (DVRO), asserting that Melani was harassing him.  On April 15, 2025, Melani filed a filed a special motion to strike the DVRO petition pursuant to Code of Civil Procedure section 425.16[1] (an anti-SLAPP motion[2]), arguing that the alleged harassment involved protected activity and that Robert's request for a DVRO fails as a matter of law.  The trial court denied the anti-SLAPP motion, and Melani appealed.  On appeal, Melani argues her anti-SLAPP motion should have been granted.[3]  We affirm.

## PROCEDURAL HISTORY AND FACTUAL SUMMARY

On February 18, 2025, Robert filed a petition for a DVRO against Melani.  In an attached declaration, he described sixteen incidents of alleged harassment, although in a subsequent filing he withdrew his assertion that seven of the incidents constituted harassment.  All of the incidents still at issue were based on Melani's activity on Facebook.

Robert summarized the incidents as follows:

> **"Incident 2:**
>
> "12/22/2023:  Melani[] posted on her Facebook, 'Oh, look the narcissist is turning into a victim again'.  This was 5 days after I moved back from Arkansas due to my abusive relationship ending.  It was known through the hate page that Melani[] had been in contact with my abuser [(Micah D.)].

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] An anti-SLAPP motion is "a special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773–774.)

[3] Robert did not file a respondent's brief.  However, "[w]e do not treat his failure to do so as a default or an admission that the trial court erred[.]" (*Hogue v. Hogue* (2017) 16 Cal.App.5th 833, 835, fn. 1.)

[¶]…[¶]

**"Incident 3:**

"05/19/2024: Melani[] joined the 'Fuck You, Rob (FYR)' Facebook page that was created by my abuser (Micah [D.]) and is designed to hate me. Melani[] took things from my personal page and posted [them] on the FYR page to mock and make fun of me.

[¶]…[¶]

**"Incident 4:**

"06/07/2024: Melani[] posted on her personal social media page 'this is so true! I think some tend to forget those little kids turn into adults. They remember and they will figure it out'. The post is titled 'Someday your kids are going to figure you out'.

[¶]…[¶]

**"Incident 5:**

"08/04/2024: Melani[] reposted my post on FYR, stating 'He is always the victim! And everyone else is crazy (with a laughing emoji)'.

[¶]…[¶]

**"Incident 6:**

"08/27/2024: Melani[] reposted my post on FYR, stating 'sounds familiar'. The post talks about narcissistic behaviors.

[¶]…[¶]

**"Incident 7:**

"09/25/2024: Melani[] posted on the FYR page: 'when someone makes fake profiles. Narcissistic people are the worst! They want to pretend to be just like your new love but they just can't pull it off!'

[¶]…[¶]

**"Incident 11:**

"10/26/2024, Melani[] liked a post that Curtis [S., Melani's current husband,] made on the FYR page. The post was 'Keep my wife's name out your F****** mouth'.

[¶]…[¶]

**"Incident 12:**

"My abuser (Micah [D.]) posted on the FYR page 07/05/2024, stating 'this is so accurate. Then they wonder why their kids want nothing to do with them. #fyr[.]' Melani[] liked it, and posted on it, stating 'This is so true! I know first hand the damage they cause.[']

[¶]…[¶]

**"Incident 13:**

"My abuser (Micah [D.]) posted on the FYR page 05/24/2024, stating 'The part about their kids tho! ... TRUT[H]'. Melani[] liked the post and responded on it, 'Wow! This is so accurate its eerie. The problem is the damage it causes also lasts a lifetime. But at least I was able to move on and leave the chaos behind where he will never be able to get away from himself. I always say at least I'm not him! At least I don't have to live this everyday anymore. #FYR #myhouseisonfire #narcissisticrecovery'."

According to Robert, because of the harassment he attends weekly therapy sessions, he is afraid to leave his house, and he is afraid the harassment will impact future career opportunities.

In response, Melani filed an anti-SLAPP motion, which included supporting evidence.[4] She asserted that Robert was abusive, that the incidents of alleged harassment involved protected activity, and that his request for a DVRO fails as a matter of law.

Robert opposed the anti-SLAPP motion. He asserted that the dissolution judgment contained a provision stating that he and Melani agreed not to harass each other. He

---

[4] On June 17, 2025, she filed additional supporting evidence.

argued that, given this agreement, Melani waived her free speech rights and privileged communications rights as to the incidents alleged in the petition for a DVRO. He also argued that Melani failed to sufficiently explain how the communications at issue involved activity protected by section 425.16 and that Melani's actions disturbed his peace.

On July 3, 2025, the trial court denied the anti-SLAPP motion. Subsequently, on Melani's request, the court issued a written order.

On July 31, 2025, Melani timely filed a notice of appeal.

## DISCUSSION

### I.  Applicable Law

"Section 425.16 provides that a cause of action arising from an act in furtherance of a person's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to strike, unless the plaintiff … establishes a probability of prevailing on the claim." (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1093 (*Bassi*).)

"The analysis of an anti-SLAPP motion proceeds in two steps[.]" (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.)  "In the first step, the trial court determines whether the claim ' "arises from" an " ' "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." ' " ' [Citation.]  The court must evaluate whether the moving defendant has shown the speech or act underlying the plaintiff's claim falls within one or more of the four categories of protected acts set out in section 425.16, subdivision (e)[.] [Citation.]  The categories protect any written or oral statement or writing made (1) 'before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,' (2) 'in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,' (3) 'in a place open to the public or a public forum in connection with

an issue of public interest,' or (4) 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' " (*Bassi*, *supra*, 101 Cal.App.5th at p. 1094.)

"If the defendant prevails at the first step, the burden shifts to the plaintiff to demonstrate the merit of the claim." (*Bassi*, *supra*, 101 Cal.App.5th at p. 1094.)  At this step, "the plaintiff must show ' "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Ibid.*)

" 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Bassi*, *supra*, 101 Cal.App.5th at p. 1094.)

## II.    Standard of Review

"We review de novo the grant or denial of an anti-SLAPP motion.  [Citation.]  We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.  [Citations.]  In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.]  We do not, however, weigh the evidence, but accept [the] plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes [her] entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)  Moreover, "[e]ven though our standard of review is de novo, an appellant 'still bears the " 'burden of affirmatively demonstrating error.' " ' " (*Luo v. Volokh* (2024) 102 Cal.App.5th 1312, 1322.)

## III.    Analysis

Melani's anti-SLAPP motion fails at the first step of the analysis.  Melani appears to assert she engaged in conduct protected by section 425.16, subdivisions (e)(3) ("any written or oral statement or writing made in a place open to the public or a public forum

in connection with an issue of public interest") and (e)(4) ("any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest").[5] Melani argues that Facebook is a public forum. She also argues that her Facebook activity was a matter of public interest because "[d]omestic violence is a significant concern nationwide" and she "discussed overcoming an abusive relationship, surviving spousal mental, physical, and financial abuse, living through the nightmarish life with her children and learning how to overcome it." She was also trying to teach others "to be aware of the behavioral patterns which she considers narcissistic[.]"

Melani has failed to demonstrate that her activity was in connection with a public issue or an issue of public interest. "[A] matter of public interest should be something of concern to a substantial number of people. [Citation.] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*).)

Here, most of the Facebook activity at issue took place in a group called, according to Robert, "Fuck You, Rob." In her activity in this group, Melani repeatedly refers to a "he" or "him," presumably Robert. Moreover, Melani admits that her "posts were representative of her firsthand experiences dealing with domestic violence[.]"[6] Thus, based on the record before us, her activity on Facebook involved her personal

---

[5] Melani also argues that her posts were privileged under Civil Code section 47, subdivision (b) and Civil Code section 47.1. However, to prevail on her anti-SLAPP motion, Melani must show that her communications fall "within one or more of the four categories of protected acts set out in section 425.16, subdivision (e)[.]" (*Bassi, supra*, 101 Cal.App.5th at p. 1094.) Neither Civil Code section 47, subdivision (b) nor Civil Code section 47.1 are listed in section 425.16, subdivision (e). Thus, these sections do not assist her at the first step of the analysis.

[6] There is no evidence before us suggesting that Melani was referring to a different individual who allegedly abused her, and Robert has asserted that she was referring to him.

experiences with Robert. However, the record does not show, nor does Melani adequately explain, how her experiences with domestic violence are a "concern to a substantial number of people." And while she does assert, in a conclusory fashion, that she was sharing her experiences to help or advocate for survivors of domestic abuse, nothing on the face of the communications supports this assertion. (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1132 ["there should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient"].)

Melani does discuss the facts of two cases, but both are inapposite.

In *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, "Sports Illustrated and an HBO television program … used the 1997 team photograph of a Little League team to illustrate stories about adult coaches who sexually molest youths playing team sports. Plaintiffs, all of whom appear in the photograph, were formerly players or coaches on the Little League team." (*Id.* at p. 626.) In addressing whether the defendants' conduct involved a public issue, the court held that "[t]he broad topic of the article and the program was not whether a particular child was molested but rather the general topic of child molestation in youth sports, an issue which, like domestic violence, is significant and of public interest. [¶] The … defendants, in publishing and broadcasting on the serious topic of child molestation, exercised orally and in writing their right of free speech concerning an issue of public interest in a public forum." (*Id.* at p. 629, fn. omitted.) In contrast, here there is no evidence that Melani wrote an article of any kind, and as discussed above, she discussed only her personal experiences with Robert.

In *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, the defendants created a report, and had meetings thereon, regarding allegations that the plaintiffs had "an inappropriate sexual relationship with a minor female in their work as church youth group leaders." (*Id.* at pp. 1538, 1540–1543.) The report "concluded that both plaintiffs exhibited gross misconduct, negligence, and insubordination, to the

detriment of at least one member of the Church's youth group, warranting their resignation and removal from contact with the youths," and "recommended among other things that the Church should update its sexual harassment policy, clarify appropriate boundaries for interpersonal conduct, involve members of the youth group and their parents in the selection of new youth leaders, and provide immediate support to youth group members and their families." (*Id.* at pp. 1542–1543.)  The court held that "the broad topic of the report and the meetings was the protection of children in church youth programs, which is an issue of public interest." (*Id.* at p. 1548.)  Here, Melani discussed only her personal experiences with Robert.  There is no evidence before us suggesting that the broad topic of her communications was protecting others from domestic violence.

Accordingly, based on the record before us, Melani has failed to show her communications involved a public issue or an issue of public interest.  Thus, her anti-SLAPP motion was properly denied.[7]

## **DISPOSITION**

The trial court's July 28, 2025 order denying Melani's anti-SLAPP motion is affirmed.  In that Robert has not appeared in this appeal, no costs are awarded.

SNAUFFER, J.

WE CONCUR:

DETJEN, Acting P. J.

MEEHAN, J.

---

[7] Nothing in this opinion should be read as suggesting that Robert's petition for a DVRO is meritorious.  We hold only that Melani failed to show her communications involved a public issue or an issue of public interest.

9.